#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
#### GREENVILLE DIVISION

**ROBERT LLOYD**                                                                          **MOVANT**

**v.**                                  **No. 4:09CR50-MPM-DAS**

**UNITED STATES OF AMERICA**                                **RESPONDENT**

### MEMORANDUM OPINION

This matter comes before the court on the motion of Robert Lloyd to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2255

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.*

## Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**

On February 18, 2009, Robert Lloyd and another robbed the Moorhead, Mississippi Postmaster at gunpoint. Lloyd entered the lobby wearing a ski mask and brandishing a semi-

automatic handgun. He pointed the gun at the Postmaster and demanded, "Gimme your money;" then chambered a bullet and again demanded, "Gimme all of it." Lloyd Presentence Investigation Report ("PSR"), ¶ 9.

A U.S. Postal Inspector filed a criminal complaint against Lloyd on March 2, 2009. Doc. 1. Later that month a Federal grand jury returned an Indictment charging Lloyd and another with the assault with the deadly weapon and brandishing a firearm in furtherance of that crime of violence. Doc. 10. Lloyd pled guilty to the two charges and the court, after considering PSR, sentenced Lloyd 221months incarceration. Doc. 84.

Through counsel, Lloyd filed a motion seeking sentence reduction under CARES and the First Step Act. Doc. 137, p. 3. The government responded separately to that motion. Doc. 138. Lloyd now files the instant *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, Doc. 135, challenging whether assault of a U.S. Postmaster with a deadly weapon is a valid predicate crime of violence under § 924(c).

## Discussion

In 2019 the U.S. Supreme Court issued *United States v. Davis*, 139 S. Ct. 2319 (2019), which invalidated the "residual clause" of 18 U.S.C. § 924(c)(3)(B) as unconstitutionally vague. It did not affect or invalidate the "elements clause" found in § 924(c)(3)(A). If a predicate offense has "as an element the use, attempted use, or threatened use of physical force against a person," a § 924(c) offense may be charged. However, if the offense does not have such an element, but only involves the substantial risk that physical force against a person may be used, that statute is not a predicate offense that will sustain a § 924(c) charge, based on the unconstitutional vagueness of the definition of a crime of violence under § 924(c)(3)(B). *Davis*, 139 S. Ct. at 2332.

*Davis* may be applied retroactively to the instant Motion to Vacate. In determining whether a judicial decision announcing a rule of law applies retroactively, a court must consider first whether the case is on direct or collateral review. The court must then consider whether the rule a defendant seeks to benefit from is "new" or "old," and "substantive" or "procedural." All new rules apply to cases pending on direct review. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987); *Powell v. Nevada*, 511 U.S. 79, 84 (1994). Nonetheless, government interest in a judgment's finality restricts the types of rules that apply retroactively to cases that were final before the rule was announced. Hence, "old" rules apply retroactively on collateral review, but "new" rules do not – unless they are either substantive rules – or watershed rules of procedure. *See Whorton v. Bockting*, 549 U.S. 406, 416 (2007); *Schriro v. Summerlin*, 542 U.S. 348, 351-352 (2004). Under this standard, *Davis* applies retroactively to cases on collateral review because it announced a new substantive rule. *See In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. July 2019) (per curiam) (holding that *Davis* announced a new substantive rule, and such a rule applies retroactively to criminal cases that became final before the new rule was announced).

**The Categorical Approach**

Lloyd's Indictment raises the following issue: Whether the assault of a U.S. Postmaster with a dangerous weapon is a crime of violence under 18 U.S.C. §§ 924(c)(3)(A) or (B). If he was convicted under subsection § 924(c)(3)(A), which is valid and sets forth specific elements, then his conviction would be sound. However, if the conviction was under § 924(c)(3)(B), the invalidated residual clause, then his conviction would be illegal. The court must use the categorical approach to decide this issue.

The Supreme Court adopted the categorical approach in *Taylor v. United States*, 495 U.S. 575 (1990). The court considered whether two of the defendant's previous state convictions for burglary qualified as "burglary" under the "enumerated offenses" clause of the Armed Career Criminal Act ("ACCA"), § 924(e)(2)(B)(ii). The Court held, first, that "burglary" in ACCA

refers to a generic offense, defined as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id*. at 598.

The Court then held that in deciding whether a prior conviction met this definition, "§ 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and *not to the particular facts underlying those convictions*." *Id*. at 600 (emphasis added). The Court noted the statutory language of ACCA, its legislative history, and the difficulties such a fact-finding process would entail. *Id*. at 600–01. "[R]espect for congressional intent and avoidance of collateral trials require that evidence of generic conviction be confined to records of the convicting court . . . ." *Shepard v. United States*, 544 U.S. 13, 23 (2005). The categorical approach condenses the statutory definition into elements of a crime, which the court must consider to determine whether the crime meets the generic definition of a crime of violence under the ACCA.

There are three reasons for using an elements-only inquiry. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). First, the ACCA's text suggests that approach in referring to "previous convictions," rather than previous acts. *Id*. Second, construing the ACCA to permit the sentencing judge to go further would raise Sixth Amendment concerns, as it could permit a judge, rather than a jury, to increase the maximum penalty for a crime. *Id*. Third, restricting consideration of use of force to the elements of prior convictions:

> avoids unfairness to defendants. Statements of "non-elemental fact" in the records of prior convictions are prone to error precisely because their proof is unnecessary. . . . At trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law; to the contrary, he "may have good reason not to"—or even be precluded from doing so by the court. When that is true, a prosecutor's or judge's mistake as to means, reflected in the record, is likely to go uncorrected. . . . Such inaccuracies should not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence.

*Id*. at 2253 (internal citations omitted).

As discussed below, Lloyd was convicted under § 924(c)(3)(A), which defines a "crime of violence" as a federal felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The Supreme Court has not directly considered the meaning of "physical force" in that provision, but it has interpreted "physical force" in analogous contexts to be "force capable of causing physical pain or injury," *Johnson v. United States*, 559 U.S. 133, 140 (2010), including any amount of force sufficient to "overc[o]me a victim's resistance, 'however slight' that resistance might be," *Stokeling v. United States*, 139 S. Ct. 544, 550 (2019); *see id*. at 554 (noting that "force as small as hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling" qualifies as "physical force") (citation and internal quotation marks omitted). The force may also be indirect, involving no actual bodily contact, *see United States v. Castleman*, 572 U.S. 157, 170 (2014); it may be applied recklessly, rather than intentionally, *see Voisine v. United States*, 136 S. Ct. 2272, 2277-2278 (2016); and it may be applied by someone other than the defendant, *see, e.g.*, *United States v. Reyes-Contreras*, 910 F.3d 169, 182 (5th Cir. 2018) (en banc).

The court has not identified any binding precedent regarding Lloyd's predicate crime – assault on a postal employee with a dangerous weapon under 18 U.S.C. § 2114 – to decide whether it meets the elements of § 924(c)(3)(A) as a crime of violence. However, the Fifth Circuit held that aggravated or armed bank robbery and attempted murder were crimes of violence:

> In deciding whether a crime falls within the ambit of § 924(c)(3)(A), we are guided by the categorical approach. This approach provides that we only analyze the elements of Smith's predicate offenses, rather than the facts, and compare those elements to the elements of the generic crime—i.e., the offense as commonly understood. If the elements of Smith's predicate offenses necessarily involve the use, attempted use, or threatened use of physical force against the person or property of another, then his predicate offenses may be treated as COVs for sentence-enhancement purposes.
>
> This categorical approach is employed when a statute sets out a single (or

'indivisible') set of elements to define a single crime. If the statute at issue is divisible—that is, if it lists multiple, alternative elements, and so effectively creates several different ... crimes—we employ the modified approach which we first determine which crime formed the basis of the defendant's conviction. Once the charged crime is ascertained, we then do a categorical approach analysis, i.e., compare the generic crime's elements to those disjunctive elements that formed the basis of the conviction.

*United States v. Smith*, 957 F.3d 590, 593 (5th Cir. 2020) (internal citations and quotations omitted).

The Fifth Circuit held 18 U.S.C. § 2113(d), armed bank robbery, to be a crime of violence under the elements clause, noting that "the least culpable conduct under that statute requires, at a minimum, an implicit threat to use force." *Id*. at 593-94 (quoting *United States v. Cadena*, 728 F. App'x 381, 382 (5th Cir. 2018) (per curiam)). The armed bank robbery statute, § 2113(d) contains substantially the same language as the last clause of Lloyd's crime – assault with a deadly weapon of a U.S. Postal employee:

| 18 U.S.C. § 2113(d) | 18 U.S.C. § 2114(a)-last clause |
|---|---|
| Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or *puts in jeopardy the life of any person by the use of a dangerous weapon or device*, shall be fined under this title or imprisoned not more than twenty-five years, or both. | if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or *puts his life in jeopardy by the use of a dangerous weapon*, or for a subsequent offense, shall be imprisoned not more than twenty-five years. |

The Sixth Circuit *has* applied the categorical approach to aggravated assault of a postal employee under § 2114 and found it to be a crime of violence under the elements clause, § 924(c)(3)(A), noting: "The common-law crime of robbery has 'long required force or violence,'" and the offense – § 2114(a) – requires "that the defendant use a dangerous weapon to put the victim's life in jeopardy." *Knight v. United States*, 936 F.3d 495, 500 (6th Cir. 2019) (citing *Stokeling v. United States*, 139 S. Ct. 544, 550 (2019) (internal citations omitted)). Other circuits have reached the same conclusion: the Seventh Circuit (see *United States v. Enoch*, 865 F.3d 575, 581 (7th Cir. 2017); the

- 8 -

Eleventh Circuit (see *In re Watt*, 829 F.3d 1287, 1290 (11th Cir. 2016)); and the Fourth Circuit (see *United States v. Bryant*, 949 F.3d 168, 180 (4th Cir. 2020)).

### Application of the Categorical Approach to the Instant Case

The definition of the crime at issue, § 2114(a) is, in relevant part:

> A person who *assaults* [*a postal employee*] with the *intent to rob*, steal, or purloin [mail, *money*, or property of the United States] … and … *puts* [*the postal employee's*] *life in jeopardy* by the *use of a dangerous weapon* … shall be imprisoned not more than twenty-five years.

See 18 U.S.C. § 2114(a) (emphasis added). The Government proved that Lloyd met all of these elements of the *predicate crime*, and the elements of the *analogous generic crimes* require proof of physical force. The elements of the various crimes involved in the analysis of this case overlap a great deal, which will lead to some repetition.

### Lloyd Assaulted the Postal Employee

In the Fifth Circuit, "[o]ur primary source for the generic contemporary meaning of [a crime] is the Model Penal Code," which defines assault, in relevant part:

> A person is guilty of assault if he … attempts by physical menace to put another in fear of imminent serious bodily injury.

§ 211.1. Assault, Model Penal Code. Drawing from other sources, the Fifth Circuit has expounded upon this definition:

> Assault, in turn, requires proof that the defendant either caused, attempted to cause, or threatened to cause bodily injury or offensive contact to another person. *See, e.g.,* Model Penal Code § 211.1(1); "Assault," Black's Law Dict. (9th ed. 2009); Wayne R. LaFave, 2 Subst. Crim. L. § 16.3 (2d ed.).

*United States v. Esparza-Perez*, 681 F.3d 228, 231 (5th Cir. 2012). In this case, Lloyd meets the elements of assault, as he attempted put the postal employee in fear of immediate serious bodily injury by physical menace (by brandishing his firearm and chambering a round).

**Lloyd Intended to Rob the Postal Employee**

The definition of robbery may also be found in the Model Penal Code:

> Robbery Defined: A person is guilty of robbery if, in the course of committing a theft, he: (a) inflicts serious bodily injury upon another; or (b) threatens another with or purposely puts him in fear of immediate serious bodily injury; or (c) commits or threatens immediately to commit a felony of the first or second degree.

§ 222.1. Robbery, Model Penal Code. For additional insight, courts have looked to Black's Law Dictionary, which provides a similar definition of robbery:

> Felonious taking of money, personal property, or any other article of value, in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force of fear.

"Robbery," Black's Law Dict. (5th ed. 1979).[1]

Lloyd was clearly in the course of committing a theft, as he yelled, "Gimme your money…. Gimme all of it!" ("PSR"), ¶ 9. He also purposely put the postal employee in fear of immediate serious bodily injury by brandishing the weapon and chambering a round. *Id.* Lloyd intended to rob the postal employee.

**Lloyd Put the Postal Employee's Life in Jeopardy by the Use of a Dangerous Weapon**

While demanding money, Lloyd brandished a firearm and chambered a round. In doing so, he placed the postal employee's life in jeopardy. He has met this element of the predicate crime charged.

**Conclusion**

Lloyd's actions met all of the elements of 18 U.S.C. § 2114(a), each of which contains an element of physical force. He intended to rob the postal employee of money. He assaulted her with

---

[1] As noted above, the Sixth Circuit has held that "[t]he common-law crime of robbery has 'long required force or violence[.]' " *See Knight v. United States*, *supra*.

the intent to rob her, and he put her life in jeopardy by using a firearm during the assault.

Under the categorical approach, if the predicate offense has "as an element the use, attempted use, or threatened use of physical force against a person," a § 924(c) offense may be charged as a crime of violence. The crime of violence element of 18 U.S.C. § 924(c)(3)(A) can be found multiple places in the predicate offense. First, Section 2114(a) includes the crimes of robbery and assault, both of which include elements of physical force. There is an element of force in robbery, as it is "accomplished by means of force or fear." *Black's Law Dictionary, supra*. Obviously, there is also an element of force in assault, as it is accomplished by using "physical menace" to cause another to "fear … imminent serious bodily injury." § 211.1. Assault, Model Penal Code. Further, § 2114(a) directly references placing the postal worker's life in jeopardy – and using a dangerous weapon – which, together, meet the definition of assault, above. A defendant satisfies each of these elements by the "use, attempted use, or threatened use of physical force against a person," which meets the requirement to qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A). This ground for relief will be denied for want of substantive merit.

## Conclusion

In sum, Lloyd's sole ground for relief is without substantive merit, and the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 21st day of August, 2023.

/s/ Michael P. Mills  
UNITED STATES DISTRICT JUDGE  
NORTHERN DISTRICT OF MISSISSIPPI